UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
99-CR-252 (JMR/ESS)
04-CV-4028 (JMR/JSM)

United States of America        )
                                )
        v.                      )        ORDER
                                )
Kenneth Lapsley                 )

Petitioner moves to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255, and to amend his initial petition. For the reasons set forth herein, petitioner's motions are denied.

I. <u>Background</u>

On March 14, 1995, pursuant to a warrant, Minneapolis police searched an apartment located at 3636 Park Avenue South in Minneapolis. The apartment was the residence of Adrian Riley, who lived there with his mother and stepfather, Kenneth Lapsley. The search warrant was based, in part, on a tip from a confidential reliable informant ("CRI") who had seen guns in the basement. The weapons were believed to have been used by Mr. Riley in a gang-related murder earlier that year.

During the course of the search, the police found a loaded .380 Bryco handgun under Mr. Lapsley's mattress. (Trial Tr. II, 43-46.) A few feet away, in the bed's headboard, police found Mr. Lapsley's wallet and identification. (<u>Id.</u>, 48-50.) Ammunition for the gun was found in the bedroom under the cover of a typewriter belonging to Mr. Lapsley. (Trial Tr. III, 59-60.)

In September, 1999, Mr. Lapsley was charged in a single count indictment with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).  Only days before trial, on February 29, 2000, a superseding indictment was issued charging Mr. Lapsley with two additional counts of firearms possession, and one of unlawful dealing in firearms, in violation of 18 U.S.C. § 922(a)(1)(A).  The felon-in-possession counts involved incidents on May 27, 1999, March 14, 1995, and in December, 1998.

Mr. Lapsley's attorney, Robert Richman, made several pretrial motions.  First, he sought disclosure of the CRI's identity.  The motion was denied.  Next, he subpoenaed, received, and reviewed mental health care records of Mary Riley, Mr. Lapsley's wife, a key government witness.  The subpoena was processed without a medical release or a court order authorizing disclosure.  Notwithstanding the absence of a release or an order by the Court, the records were transferred to defense counsel.  On February 8, 2000, the Court directed counsel to turn over the mental health records to the custody of the Court, at which time they were sealed.  The Court further ordered that Mr. Richman could not use the information derived from these records at trial, absent prior Court permission.

Mr. Lapsley also moved to sever the counts of the superseding indictment.  The motion was granted, and the Court severed the first count, concerning the May 27, 1999 incident, which was ready for trial.  The Court denied Mr. Lapsley's motion to sever the

remaining three counts from each other.  On March 2, 2000, trial commenced on the first count, and on March 8, 2000, the jury acquitted Mr. Lapsley of that charge.

The remaining three counts proceeded to trial.  Mr. Lapsley's motion to stipulate his status as a felon was granted pursuant to Old Chief v. United States, 519 U.S. 172, 190-91 (1997); see Trial Tr. I, 3-16; Sent. Tr., 7-8.  The stipulation noted two prior felony convictions from 1991 and 1995, but did not further describe those crimes.  The Court later admitted the facts of the 1991 conviction under Federal Rule of Evidence 404(b).

Mr. Lapsley's wife, Mary Riley, testified that Mr. Lapsley obtained a gun for protection after their house was attacked by drug dealers.  (Trial Tr. III, 17-18.)  Defense counsel vigorously cross-examined Ms. Riley, and challenged her credibility by having her admit to previous lies in state court, to the police, and to a grand jury (id., 23-27); by raising her own prior felony conviction for possession of a controlled substance (id., 27); by raising her lies concerning her conviction on an application to visit her son in prison (id., 27-28); and by showing she had a motive to lie premised on her overhearing Mr. Lapsley say he did not intend to live with her in the future (id., 33-36).

On redirect, the government attempted to rehabilitate Ms. Riley's truthfulness after obtaining the Court's permission to elicit her testimony that Mr. Lapsley had directed her to sell the

drugs underlying her conviction.  (Id., 38-40.)  After defense counsel's objection, the Court permitted the inquiry because Mr. Lapsley had initiated the subject.  The government's inquiry was limited to two questions:

> Q.  In terms of the conviction you received in 1995, in March of 1995 during the raid of your house when you were arrested for possession, umm, you testified that you were convicted of possession of drugs, correct?
>
> A.  Yes.
>
> Q.  Where did those drugs come from?
>
> A.  Umm, Kenneth had gave me some that morning to take over there to sell while he, you know, had went to work to sell to those guys over there at Mr. Johnny Hall's house.

(Id., 40.)  On recross, defense counsel again attempted to impeach Ms. Riley by asking whether she had mentioned this to the police or state court.  (Id., 43-44.)  Counsel made no attempt to impeach her through the use of her mental health treatment records.

In addition to Ms. Riley, two other witnesses testified that they had seen Mr. Lapsley in possession of the .380 handgun at issue in the indictment.  (Trial Tr. I, 33-35; II, 96-97.)

On June 14, 2000, after a one-week jury trial on the three counts, the jury convicted Mr. Lapsley on Count 2 of the superseding indictment, which charged him with possession of the .380 Bryco firearm found on March 14, 1995.  Mr. Lapsley was acquitted on the other counts.  On June 20, 2000, Mr. Lapsley moved for a new trial raising the issues of disclosure of the CRI,

preaccusation delay, and severance of counts.  The Court denied the motion.  On December 1, 2000, the Court found Mr. Lapsley to be an armed career criminal, and sentenced him to 235 months in prison.

Mr. Lapsley appealed his conviction and sentence, claiming he did not receive a fair trial because the Court failed to disclose the identity of the CRI and to sever the counts for trial.  He further argued that a preaccusatory delay of nearly five years prejudiced his defense and violated due process; that his sentence was unconstitutional because it exceeded the statutory maximum; and that the Court erred in sentencing him as an armed career criminal.  On August 28, 2001, the Eighth Circuit Court of Appeals remanded the case for an _in camera_ review of the CRI's testimony.  _United States v. Lapsley_, 263 F.3d 839, 843 (8th Cir. 2001).

After a hearing on remand, the Court denied any relief, finding that the CRI's testimony was not material to any disputed issue.  Mr. Lapsley again appealed.  The Eighth Circuit affirmed, holding that Mr. Lapsley failed to show that the CRI's information was material to his defense, as required for identity disclosure.  _United States v. Lapsley_, 334 F.3d 762, 765 (8th Cir. 2003).  Mr. Lapsley petitioned for certiorari.  His petition was denied.  _Lapsley v. United States_, 540 U.S. 1186 (2004).

On September 3, 2004, Mr. Lapsley filed his initial § 2255 petition [Docket No. 167].  Before the government responded, Mr. Lapsley filed a motion to amend the petition [Docket No. 188].  The

government responded to both the petition and the motion to amend on December 14, 2004 [Docket No. 174].  Mr. Lapsley replied to the government's response on January 14, 2005 [Docket No. 178].  He then filed two additional motions to amend his petition on January 20, 2005 [Docket No. 181] and March 23, 2005 [Docket No. 182].  At the Court's direction, the government responded to these motions on May 23, 2005 [Docket No. 184].  On June 2, 2005, Mr. Lapsley moved for an extension of time in which to reply to the government's second response [Docket No. 185], and on June 13, 2005, he submitted his reply [Docket No. 186].

II.  Analysis

Mr. Lapsley claims his trial counsel was ineffective because he (1) failed to challenge the police officers' unannounced entry; (2) failed to raise a Franks claim; (3) failed to impeach Ms. Riley with her with mental health records; (4) advised Mr. Lapsley not to testify; (5) failed to present a justification defense; (6) failed to request a "mere presence" instruction; and (7) on appeal, failed to argue that the introduction of facts underlying a prior conviction was barred by Old Chief.  In addition, Mr. Lapsley argues that the Court's finding that he was an armed career criminal violated Shepherd v. United States, 125 S.Ct. 1254 (2005). The Court will address each issue in turn.

A.  Ineffective Assistance of Counsel

To prevail on his claim of ineffective assistance of counsel,

Mr. Lapsley must show that counsel's performance was deficient, and that he suffered actual prejudice as a result.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  Prejudice means "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.  Mr. Lapsley must show counsel's deficient performance rendered the proceedings fundamentally unfair or unreliable.  El-Tabech v. Hopkins, 997 F.2d 386, 389 (8th Cir. 1993).  The Court "need not address the competency of counsel's performance if the prejudice issue is dispositive[.]"  Blankenship v. United States, 159 F.3d 336, 338 (8th Cir. 1998).

Defense counsel's performance is reviewed with deference on the presumption that the representation was competent, and that challenged decisions constituted the strategic and tactical decisions of counsel.  Strickland, 466 U.S. at 689.  "[R]easonable trial strategy cannot rise to the level of ineffective assistance of counsel."  English v. United States, 998 F.2d 609, 613 (8th Cir. 1993), citing Stacey v. Solem, 801 F.2d 1048, 1051 (8th Cir. 1986).  Counsel's decisions are presumed reasonable, and "strategic choices made after thorough investigation of law and facts . . . are virtually unchallengeable[.]"  Strickland, 466 U.S. at 690.  Reasonable trial strategy does not constitute ineffective

7

assistance of counsel simply because it was not successful.  Graham v. Dormire, 212 F.3d 437, 440 (8th Cir. 2000).

    1.  The No-Knock Warrant Had Adequate Factual Support

Defense counsel did not challenge the March 14, 1995, warrant's authorization for unannounced entry.  Mr. Lapsley claims this failure rendered counsel ineffective.  The Court disagrees.

The search warrant affidavit sought authority to search "3636 Park Avenue South, downstairs," and requested unannounced entry because suspects at that location were believed to be armed. Government's First Response [Docket No. 174], Ex. 1.  Mr. Lapsley argues that these facts were not sufficient to support an unannounced entry.

An unannounced entry must be supported by reasonable suspicion.  See Richards v. Wisconsin, 520 U.S. 385, 394 (1997). The Eighth Circuit has held no-knock entries reasonable in situations involving threats of physical violence.  United States v. Lucht, 18 F.3d 541, 549 (8th Cir. 1994).  The Court inquires whether, given the facts and circumstances known to the officers, they "reasonably decide[d] there [was] an urgent need to force entry."  Id.  Here, the affidavit clearly averred facts to support the issuance of a no-knock warrant.  It claimed the CRI had conversations with gang members who admitted participating in the murder of Ronald Harris, and had observed the gang members in possession of weapons while in the downstairs duplex of 3636 Park

Avenue South.

Mr. Lapsley suggests that the affidavit amounts to no more than a statement that the firearms were present at the location, and is insufficient to support an unannounced entry under <u>United States v. Marts</u>, 986 F.2d 1216, 1218 (8th Cir. 1993).  He is incorrect.  The affidavit alleges not only the presence of weapons at a location, as in <u>Marts</u>, but also the presence of gang members who admitted participating in a murder.  Under such circumstances, officers may reasonably fear a threat of violence.  In the face of weapons, and those who may be inclined to use them, a no-knock entry is fully justified.

Moreover, even assuming a defective search warrant, the guns would still have been admissible under the good faith exception in <u>United States v. Leon</u>, 468 U.S. 897, 921-22 (1984).  <u>See</u> <u>United States v. Scroggins</u>, 361 F.3d 1075, 1082 (8th Cir. 2004) (good faith exception to exclusionary rule applies to no-knock provision of warrant).  The officers were justified in relying on a facially valid no-knock search warrant issued by a Minnesota judge, and exclusion of the guns would have been improper.

Because the issuance of the warrant was justified, and because the guns seized would have been admissible in any event, the Court cannot find defense counsel's decision against challenging the no-knock entry to be ineffective assistance of counsel.

### 2.  Any *Franks* Claim Is Meritless

Mr. Lapsley also claims his attorney should have brought a *Franks* challenge concerning the search warrant.  Facially sufficient affidavits are susceptible to challenge if they contain deliberate or reckless falsehoods.  United States v. Allen, 297 F.3d 790, 795 (8th Cir. 2002), citing Franks v. Delaware, 438 U.S. 154, 155-156 (1978).  Mr. Lapsley alleges the affiant knew of a juvenile unrelated to 3636 Park Avenue South who had confessed to murdering Ronald Harris.  Mr. Lapsley further observes that none of the firearms recovered from 3636 Park Avenue South have been linked to the murder.  From these assertions, Mr. Lapsley urges the Court to conclude that the statements in the affidavit relating the murder to the weapons found at 3636 Park Avenue South were false when made, and subject to a *Franks* challenge.  (Petitioner's Memorandum of Law [Docket No. 167] at 14.)

In order to sustain a *Franks* challenge, a defendant must establish three things:  (1) a false statement (or misleading omission) of fact; (2) made knowingly or with reckless disregard for the truth; (3) which, when removed from (or added to) the affidavit, renders the affidavit insufficient to establish probable cause.  See Franks, 438 U.S. at 155; Allen, 297 F.3d at 795.  Mr. Lapsley's challenge fails on each ground.

Mr. Lapsley has offered no evidence tending to show the

affiant made false statements or omissions.   The affiant based his statements on the CRI's observations and statements; there is no evidence that these facts were not "believed or appropriately accepted by the affiant as true."   <u>Franks</u>, 438 U.S. at 165.   While subsequent investigation may have failed to link the weapons seized from the apartment to the Harris murder, this fact does not prove the affiant's statements were untrue when made, or whether there was probable cause to support the issuance of the warrant.   While the applicant may have heard of a juvenile's confession, he said he did not believe the confession, and accordingly, chose not to include it in the affidavit.   There is absolutely no evidence that this decision was made with intent to mislead.

Finally, there is no evidence that any of the alleged misstatements or omissions would have affected the finding of probable cause.   The Court assumes that, had the affidavit been supplemented with the fact of the juvenile's confession, <u>see</u> <u>Allen</u>, 297 F.3d at 795, or, conversely, if the paragraphs related to the murder investigation were entirely deleted, <u>see</u> <u>Franks</u>, 438 U.S. at 155, the affidavit would still set forth probable cause to search the residence.   Paragraphs 5 and 6 of the affidavit set forth facts tending to show that narcotics were distributed from the residence. This would have been more than enough to support a search warrant. The seized firearms would have fallen within the scope of a narcotics warrant, as firearms are recognized "tools of the trade"

11

for drug dealers.  See, e.g., United States v. Claxton, 276 F.3d 420, 423 (8th Cir. 2002).

A Franks challenge to the search warrant in this case would have been fruitless and meritless.  Accordingly, defense counsel's election against bringing such a motion was reasonable strategy, and does not rise to the level of ineffective assistance of counsel.

### 3.   Impeachment Decisions Were Sound Trial Strategy

Mr. Lapsley's attorney impeached Ms. Riley with her prior drug conviction.  This opened the door to examination of evidence concerning that offense, and with it, Mr. Lapsley's drug dealing. Counsel did not use the information relating to Ms. Riley's mental health treatment.  He now claims these decisions rendered counsel's performance ineffective.  The Court disagrees.

Mr. Lapsley is unable to show either deficient performance or actual prejudice.  Ms. Riley testified to an essential fact – possession of the handgun.  Counsel reasonably attempted to impeach her.  He did so pursuing several paths, including introducing her prior conviction.  Introducing the conviction was a calculated risk.  It allowed the government to ask about the source of the drugs, and to connect the drugs with Mr. Lapsley.  Yet the Court cannot say this decision was so unreasonable as to amount to deficient performance.

Similarly, counsel's decision against introducing Ms. Riley's

mental health treatment records reflects equally reasonable trial strategy. Mr. Lapsley fails to remind the Court that Ms. Riley sought mental health counseling after Mr. Lapsley stabbed her – a crime for which he was imprisoned. Counsel might reasonably decide, for strategic reasons, not to open this door. Moreover, Mr. Lapsley has not shown that evidence of Ms. Riley's mental health treatment would have been relevant or admissible.

Psychiatric records may be used only in carefully limited circumstances; for example, when they reflect facts bearing on a witness's ability to "comprehend, know, and correctly relate the truth." United States v. Love, 329 F.3d 981, 984 (8th Cir. 2003) (citations omitted); see also Newton v. Kemna, 354 F.3d 776, 780-81 (8th Cir. 2004). There is no evidence whatsoever to suggest Ms. Riley's mental health treatment had any bearing on her ability to perceive, understand, and recall the events to which she testified. Counsel decided to forego challenges to her memory, preferring instead to highlight her history of bias and lack of truthfulness. Although unsuccessful, these decisions were well within the range of legitimate trial strategy.

Even assuming counsel's performance to be deficient (and the Court knows otherwise), Mr. Lapsley has not shown a reasonable probability that the outcome of the trial would have been different. As described above, Ms. Riley's credibility was impeached extensively on other grounds; Mr. Lapsley has not shown

that further impeachment would have been more than merely cumulative. See United States v. Quintanilla, 25 F.3d 694, 699 (8th Cir. 1994) (alleged Brady violations harmless where undisclosed evidence was cumulative and "would not have significantly enhanced the defendant's cross examination"); Newton, 354 F.3d at 781 (defense counsel had "ample opportunity to cross examine and impeach the character and testimony" of witness without presenting evidence of her mental condition). The government's follow-up concerning Ms. Riley's drug conviction amounted to two questions in the course of a week-long trial, and Mr. Lapsley has not shown these questions affected the outcome of the proceedings. Finally, Ms. Riley was only one of three witnesses who testified to Mr. Lapsley's possession of the firearm. The jury had ample evidence to support its verdict without considering her testimony.

For these reasons, the Court finds no evidence that counsel's decisions regarding the impeachment of Ms. Riley were ineffective assistance of counsel.

4. Advice Not to Testify

Mr. Lapsley claims his decision not to testify was based on his attorney's advice that, if he did, and was convicted, he would automatically receive a two-point sentencing enhancement for obstruction of justice under section 3C1.1 of the United States Sentencing Guidelines. (Petitioner's Memorandum of Law at 22-26.) This argument is conclusory and wholly without merit.

Assuming Mr. Lapsley's allegations are true, this does not establish actual prejudice.  A defendant's "bare bones" assertion that counsel deprived him of his right to testify is insufficient to warrant an evidentiary hearing.  See Underwood v. Clark, 939 F.2d 473, 475-76 (7th Cir. 1991); Siciliano v. Vose, 834 F.2d 29, 31 (1st Cir. 1987).  To obtain an evidentiary hearing, Mr. Lapsley must set forth the substance of the testimony he would have offered, as well as an affidavit from counsel, "to give the claim sufficient credibility to warrant a further investment of judicial resource in determining the truth of the claim."  Underwood, 939 F.2d at 476.  Mr. Lapsley has provided neither substance nor support, which is fatal to his claim.

Even assuming Mr. Lapsley would have testified exactly as he has indicated in support of his claimed "justification" defense (see Sworn Affidavit of Kenneth Lapsley dated August 4, 2004, ¶ 13), he cannot demonstrate that the absence of this testimony prejudiced his defense.  As set forth more fully below, there is no legal or factual basis for a justification defense in this case.  To the extent such a defense might arguably have been asserted based on the attack on Mr. Lapsley's home, these facts were presented to the jury through the testimony of Mr. Lapsley's wife. (Trial Tr. III at 17-19, 28, 31-32.)  Mr. Lapsley has not shown he could have testified to anything not already in evidence.  While a defendant's testimony in his own trial is unique and

inherently significant, that presumption, standing alone, is not enough to satisfy Strickland's test for prejudice. United States v. Rodriguez, 286 F.3d 972, 985 (7th Cir. 2002).

Secondly, Mr. Lapsley cannot show prejudice because the Court explicitly advised him of his absolute right to testify:

> THE COURT:  Mr. Lapsley, I want to tell you what I believe you already know.  You have an absolute right to remain silent, and you are under no obligation to testify during this proceeding.  In the event you choose not to testify, no one will be permitted to comment on it.  On the other hand, if you wish to testify you have an absolute right to do so.  Neither the prosecution nor your lawyer nor I can stop you.  You do not have to testify if you do not wish, and you may if you want. Understood?
>
> DEFENDANT: Yes sir.

(Trial Tr. I, 14-15.)

Because he is unable to show any prejudice resulting from counsel's alleged advice not to testify, the Court need not reach the question of counsel's performance. Blankenship, 159 F.3d at 338.  However, the Court notes that, had Mr. Lapsley testified that he acquired the gun for protection, his testimony would have been irreconcilable with the rest of his trial defense that the gun was not his.  (Trial Tr. I, 23-28; V, 27-34.)  Because Mr. Lapsley could not have presented both defenses, counsel's decision to choose one over the other is fully consistent with legitimate trial strategy.

    5.  Justification Defense

Mr. Lapsley claims his attorney should have presented the

16

defense of justification to the felon-in-possession charge.  As noted above, this was a legitimate tactical and strategic decision. For purposes here, the Court will set aside the theory that this was not Mr. Lapsley's gun, which is, of course, the foundation on which he premised his defense.

The fact remains that Mr. Lapsley cannot show he was entitled to present such a defense at all.  The Eighth Circuit Court of Appeals has yet to recognize a justification defense in the context of a violation of 18 U.S.C. § 922(g).  See, e.g., United States v. Taylor, 122 F.3d 685, 688-89 (8th Cir. 1997); United States v. Lomax, 87 F.3d 959, 961 (8th Cir. 1996).  As a result, the defense had no legal basis.

Even if it had, the defense would not apply on these facts. As the Eighth Circuit recognized, those circuits which have adopted the justification defense require a defendant to present evidence that he "had no reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm."  Taylor, 122 F.3d at 689, citing United States v. Blankenship, 67 F.3d 673, 677 (8th Cir. 1995).  The defendant must further demonstrate that he did not recklessly or negligently place himself in the situation in which it was probable that he would be forced to choose the criminal conduct.  Taylor, 122 F.3d at 689.  Finally, the defendant must establish that there was an unlawful, present, imminent, and impending threat of such a

nature as to induce a well-grounded apprehension of death or serious bodily injury. Blankenship, 67 F.3d at 676. The Eighth Circuit has noted that jurisdictions recognizing this defense construe it narrowly, allowing it only under compelling circumstances, and where the defendant possessed the gun only long enough to fend off a specific attack. See Lomax, 87 F.3d at 961-62, and cases cited therein.

Trial evidence showed that, approximately one month before the search warrant was executed, several gang members shot at Mr. Lapsley's house, most likely because his stepson was involved in gang activity. (Trial Tr. III, 16-18.) As a result, he obtained a handgun to protect the house and family. (Id.) Mr. Lapsley retained the weapon for at least one month after the attack. There was no evidence that he sought any help or took any steps as an alternative to arming himself. Nor was there evidence that he was without reasonable legal alternatives. Compare Lomax, 87 F.3d at 962.

This evidence does not meet the standard for a justification defense. There is no indication of an immediate and imminent threat. Compare Blankenship, 67 F.3d at 677-678 (justification defense not applicable where defendant had opportunities to avoid confrontation with victim and to call for help).

Faced with this law and these facts, counsel might legitimately decide as a matter of trial strategy against

18

presenting a justification defense.  Counsel's failure to raise a defense neither recognized by the Eighth Circuit nor supported by the facts does not amount to ineffective assistance.

     6. <u>Mere Presence Instruction</u>

Mr. Lapsley argues his counsel was ineffective because he failed to request a "mere presence" instruction.  This argument fails, because the Court gave the instruction.  As a result, Mr. Lapsley cannot show actual prejudice.

The Court instructed the jury on the element of possession, saying:

> Whenever the word possession is used in these instructions it includes actual as well as constructive possession, and sole as well as joint possession.  But you of course will understand that <u>just being present where something is located does not equal possession</u>. The government must prove that the defendant had actual or constructive possession of the firearm, and knew that he did for you to find him guilty of this crime, and this, of course, is for you all to decide.

(Trial Tr. V, 72-73) (emphasis added).

Beyond this, the Court gave a separate "theory of the defense" instruction, and said:

> I tell you, after having explained the indictment which is the government's theory of the case, that the defendant has pleaded not guilty to those charges in the indictment.  His counsel, as you are well aware, on his behalf stipulated to one of the elements of Count 1 and 2, but that is of his prior status of having been convicted.  But his not guilty plea denies the other two offense elements at issue in each of those counts, and he had denied all of the essential elements in Count 3.

(Trial Tr. V, 75.)

The adequacy of jury instructions is determined by looking at them as a whole. <u>Claxton</u>, 276 F.3d at 423-24. A defendant is not entitled to a particularly worded instruction; the question is whether the Court's instruction adequately and correctly covered the substance of defendant's request. <u>United States v. Manning</u>, 618 F.2d 45, 48 (8th Cir. 1980).

The instructions clearly told the jury that Mr. Lapsley's mere presence was insufficient to convict him of possession. Taken together, the possession and theory of defense instructions addressed the issues raised by Mr. Lapsley. <u>Compare</u> 8th Cir. Model Jury Instruction (Crim.) 5.06B (2001); O'Malley, Grenig & Lee, <u>Federal Jury Practice & Instructions</u> (5th Ed.) § 16.09 (2000). No more was required.

A possession instruction was sufficient, and indeed more appropriate, than a "mere presence" instruction, because Mr. Lapsley lived in and owned the home, but was not present in the room at the time the guns were found. <u>See, e.g.</u>, <u>United States v. McKnight</u>, 953 F.2d 898, 903 (5th Cir. 1992) (where gun found in defendant's presence at the home he lived in and owned, constructive possession instruction obviates need for mere presence instruction); <u>United States v. Rice</u>, 995 F.2d 719, 725 (7th Cir. 1993) (constructive possession instruction sufficient, mere presence instruction not required).

Here, the defense theory was that Mr. Lapsley's stepson owned the gun and hid it in Mr. Lapsley's bedroom without his knowledge. The Court's instruction provided everything to which Mr. Lapsley was entitled.  Mr. Lapsley cannot show prejudice or deficient performance on this issue, and therefore his counsel's failure to request the instruction does not constitute ineffective assistance.

    7.  <u>Failure to Raise *Old Chief* on Appeal</u>

Mr. Lapsley claims that, because he agreed to stipulate his status as a convicted felon, the government should have been precluded from entering his two felony convictions and the details of the 1991 conviction.  He asserts that his attorney was ineffective for failing to raise this argument on appeal.

Appellate counsel has no duty to raise "every nonfrivolous claim" on appeal, and in fact, has discretion to abandon losing issues.  <u>Reese v. Delo</u>, 94 F.3d 1177, 1185 (8th Cir. 1996).  To show that his attorney was deficient in failing to raise the claim on appeal, Mr. Lapsley must show a reasonable likelihood that, but for this error, the result on appeal would have been different.  <u>Blackmon v. White</u>, 825 F.2d 1263, 1265 (8th Cir. 1987).  Mr. Lapsley cannot make this showing, because the <u>Old Chief</u> issue has no merit.

The specifics of a prior conviction which might not be admissible under <u>Old Chief</u> may be properly admitted under Federal Rule of Evidence 404(b).  <u>United States v. Hill</u>, 249 F.3d 707, 711-13 (8th Cir. 2001) (<u>Old Chief</u> does not bar admission of past

convictions under 404(b) for purpose of proving intent), citing United States v. Crowder, 141 F.3d 1202, 1206 (D.C. Cir. 1998) (en banc); see also United States v. Frazier, 280 F.3d 835, 846-48 (8th Cir. 2002) (Old Chief does not bar evidence admitted to prove issue specifically authorized by 404(b)). Specifically, a prior history of intentionally possessing guns is relevant to the determination of whether a person in proximity to a firearm had knowledge and intent to possess it. See United States v. Cassell, 292 F.3d 788, 794-95 (D.C. Cir. 2002); see also United States v. Jernigan, 341 F.3d 1273, 1281 (11th Cir. 2003).

As noted above, Mr. Lapsley's theory was that the firearm was not his, but belonged instead to another person who placed it in his room without his knowledge. Evidence of his 1991 conviction for possessing a gun was relevant to show lack of mistake, knowledge, and intent. See, e.g., Frazier, 280 F.3d at 847-48 (prior conviction and possession of drugs relevant to rebut defense that defendant was merely present where drugs were found). Accordingly, any error under Old Chief regarding the 1991 conviction would have been harmless, because Rule 404(b) furnished an independent basis upon which to introduce this conviction. This issue had no chance of success on appeal, and therefore, counsel's failure to raise it was not ineffective.

Any argument under Old Chief regarding the 1995 conviction fails for similar reasons. The parties stipulated that Mr. Lapsley

had been convicted in 1991 and 1995 of an offense punishable by greater than one year of imprisonment, without mentioning the nature of either conviction. Given that the fact and nature of the 1991 conviction were independently admissible, the introduction of the 1995 conviction – even if erroneous – was no more than harmless error. Accordingly, appellate counsel's failure to raise the issue did not amount to ineffective assistance.

In sum, Mr. Lapsley cannot show that, but for counsel's failure to raise the issue, the result of the appeal would have been different. His claim of ineffective assistance concerning his appeal cannot prevail.

B.   Shepherd v. United States

Finally, Mr. Lapsley argues that the Court's decision to sentence him as an armed career criminal violated the Supreme Court's directive in Shepherd v. United States, 125 S.Ct. 1254 (2005). In Shepherd, the court held that a sentencing court attempting to determine whether an earlier offense was violent for the purposes of 18 U.S.C. § 924(e), could look only to the statutory elements, the charging documents, the defendant's admissions at his change of plea hearing, and accepted findings of fact confirming the factual basis of the guilty plea. Shepherd, 125 S.Ct. at 1263. Here, Mr. Lapsley argues that the Court considered matters not permitted by Shepherd in finding his 1991 conviction was a violent offense.

Shepherd was decided on March 7, 2005, more than a year after Mr. Lapsley's conviction became final.  Mr. Lapsley has cited no case, and this Court is aware of none, holding that Shepherd applies retroactively.  Indeed, Shepherd follows Apprendi v. New Jersey, 530 U.S. 466 (2000), see Shepherd, 124 S.Ct. at 1262-63, and Apprendi is not retroactive.  United States v. Moss, 252 F.3d 993, 997 (8th Cir. 2001), cert. denied, 534 U.S. 1097 (2002); see also Schriro v. Summerlin, 124 S.Ct. 2519, 2526 (2004) (Ring v. Arizona, 536 U.S. 584 (2002) which relied on Apprendi, not retroactive); Booker v. United States, 125 S.Ct. 738, 769 (2005) (same, for Blakely v. Washington, 542 U.S. 296 (2004) which relied on Apprendi).

Even if retroactive, Shepherd's directives were not violated. Shepherd allows the sentencing Court to consider the complaint, plea agreement, transcript, or "some comparable judicial record." 125 S.Ct. at 1263.  At sentencing, the government submitted Mr. Lapsley's 1991 state court plea agreement, complaint, judgment, and guilty plea transcript relating to the offense of witness tampering.  The witness was Mary Riley, Mr. Lapsley's wife.

Minnesota's witness tampering statute provides that the crime can be committed by "means of force or threats of injury to any person or property."  Minn. Stat. § 609.498, subd. 1.  At sentencing, Mr. Lapsley claimed that, because the statute, in general, allows conviction for making threats of injury to

24

property, his conviction should not be considered a violent felony. His guilty plea transcript, however, clearly delineates the facts underlying his conviction:  his crime involved threats of personal violence.  (1991 Plea Tr. at 6-7.)  He admitted telling his wife "you're not going to be able to press charges because you're not going to be able to make it to Court[.]"  (Id.)

In finding Mr. Lapsley's 1991 witness tampering conviction to be a crime of violence, the Court relied on his admissions in state court (Sent Tr., 5-7) and its knowledge of his violent relationship with his wife, as documented in the presentence report to which he did not object.  (Id.)  Accordingly, the Court used the information learned at trial, the unchallenged statements in the presentence report, and the guilty plea transcript in deciding that the 1991 conviction was for a violent offense.

For these reasons, Mr. Lapsley's claim under Shepherd v. United States are without merit.

C.  The Motions to Amend

The Court now addresses Mr. Lapsley's motions to amend his petition.  Mr. Lapsley filed his § 2255 petition under the Court's Rules.  The federal rules contemplate an initial motion by petitioner, followed by a response (if ordered by the Court), followed by the petitioner's reply.  See Federal Rules Governing Proceedings Under 28 U.S.C. § 2255, Rules 2, 4(b) and 5.  In this case, before the government responded to his initial motion, Mr.

Lapsley filed a motion to amend the petition [Docket No. 188]. The government's response [Docket No. 174] addressed both the original petition and the motion to amend.  Thereafter, Mr. Lapsley filed both a reply [Docket No. 178] and two additional motions to amend his petition [Docket Nos. 181 and 192].  The Court directed the government to respond to these successive arguments, which the government did [Docket No. 184].  Thereafter, Mr. Lapsley was afforded an opportunity for a second reply [Docket No. 186].

The Court has considered the arguments put forward by Mr. Lapsley in his motions and finds them to be without merit.  No good cause having been shown, Mr. Lapsley's three motions to amend his petition are denied.  Mr. Lapsley will be granted no further leave to amend his petition.

D.  <u>Certificate of Appealability</u>

The Court has considered whether issuance of a Certificate of Appealability ("COA") is appropriate.  <u>See</u> <u>Tiedman v. Benson</u>, 122 F.3d 518, 522 (8th Cir. 1997).  In that context, the Court concludes that no issue raised in this petition is "debatable among reasonable jurists." <u>Flieger v. Delo</u>, 16 F.3d 878, 882-83 (8th Cir. 1994) (citation omitted).  Petitioner has not made the "substantial showing of the denial of a constitutional right" necessary for the issuance of a COA.  28 U.S.C. § 2253(c)(2).

26

III. <u>Conclusion</u>

For all the above reasons, Mr. Lapsley's petition under 28 U.S.C. § 2255 [Docket No. 167] is denied. Mr. Lapsley's motions to amend his petition [Docket Nos. 181, 182] are denied. Mr. Lapsley's motion for extension of time to respond to the government's response [Docket No. 185] is denied as moot, and Mr. Lapsley's brief in response to the government's response [Docket No. 186] is accepted. No Certificate of Appealability shall issue.

IT IS SO ORDERED.

Dated:  July 28, 2005

<u>s/ James M. Rosenbaum</u>
JAMES M. ROSENBAUM
United States Chief District Judge

27